United States District Court
Southern District of Texas
**ENTERED**
August 11, 2016
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| TERRY JOE SOLLEY, | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:15-CV-02608 |
| | § | |
| LORIE DAVIS, | § | |
| Director, Texas Department of Criminal | § | |
| Justice - Correctional Institutions Division, | § | |
| *Respondent*. | § | |

## AMENDED[1] MEMORANDUM AND RECOMMENDATION

Petitioner Terry Joe Solley, a Texas state inmate, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his aggravated robbery conviction. Dkt. 1. The matter was referred to this magistrate judge for report and recommendation. Dkt. 7. Respondent filed a motion for summary judgment. Dkt. 14. After reviewing the record and the law, the Court recommends that the petition be denied.

## BACKGROUND

In 2006, Solley and his father used a BB gun and knife to rob a bank. At trial, Solley admitted that he took part in the robbery. He argued, however, that he acted under duress, agreeing to participate in order to prevent his father from killing anyone during the robbery. *See* Dkt. 24-1 at 75–76. A jury found Solley guilty of aggravated robbery, and he is currently serving a 35-year sentence imposed by the 339th District Court of Harris County on September 24, 2007. Dkt. 1 at 2; Dkt. 21-8 at 56. Solley's conviction was affirmed on appeal. *See Solley v. State*, No. 14-07-00803-CR, 2009 WL 396268 (Tex. App.—Houston [14th Dist.] Feb. 19, 2009). The Court of Criminal Appeals (CCA) refused Solley's petition for discretionary review.[2] That court also

---

[1] The memorandum and recommendation is amended to reflect that Solley's aggravated robbery of a Gerland's Grocery, rather than a Blimpie's, formed the basis of his enhancement paragraph. The Court's analysis is unaffected by this amendment.

[2] *See* PD-1140-11, *available at* http://www.search.txcourts.gov/Case.aspx?cn=PD-1140-11&coa=coscca.

denied his state habeas application on September 24, 2014, without a written order based on the findings of the trial court without a hearing. Dkt. 23-10. Solley then filed his federal habeas petition.

## ANALYSIS

Solley's petition is subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254. Section 2254 sets forth a "'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). A petitioner cannot obtain federal habeas corpus relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim resulted in:

(1) a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or

(2) a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

*Harrington v. Richter*, 562 U.S. 86, 100 (2011); 28 U.S.C. § 2254(d).

Solley, proceeding *pro se*, challenges his conviction on the following grounds: (1) the State improperly commented on his post-arrest silence; (2) the State knowingly introduced false testimony; (3) the State made improper closing arguments; and (4) ineffective assistance of counsel. The Court addresses each of these claims below.

### Ground One: Improper comment on post-arrest silence

Courts review allegedly improper prosecutorial comments to determine whether they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986). Conduct that is simply "undesirable or even

universally condemned" is not sufficient to warrant federal habeas relief; rather, the misconduct must have deprived the petitioner of a fair trial. *Id.* at 181. The petitioner must show that the misconduct was sufficiently "persistent and pronounced" or that "the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Geiger v. Cain*, 540 F.3d 303, 308 (5th Cir. 2008) (quoting *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988)). "[A] prosecutor's improper argument will, in itself, exceed constitutional limitations in only the most 'egregious cases.'" *Menzies v. Procunier*, 743 F.2d 281, 288–89 (5th Cir. 1984) (quoting *Houston v. Estelle*, 569 F.2d 372, 382 (5th Cir. 1978)).

In Ground One, Solley claims that the State, while cross-examining him, improperly commented on his post-arrest silence during the following exchange:

Q.      You talked with Officer Ryza on that day?

A.      Yes, ma'am.

Q.      You've already told us that, correct?

A.      Yes, ma'am.

Q.      And when you talked to him, you told him that you were worried, but that you were worried about your father, correct?

A.      That's not exactly what I said, no.

Q.      You told the officer that you were worried because your father said he was going to do it by himself and that he could be taken down and you said you were worried about that?

A.      I said that. I did. I told him that. But let me -- let me correct you about what I did say. You were saying half of what I said.

Q.      Okay. Let's talk about the other half. You never ever told Officer Ryza that you were worried about anybody else?

A.      Yes, ma'am, I did.

Dkt. 24-1 at 117.

Solley argues that the question concerning whether he told Officer Ryza about his concern for others improperly referred to his post-arrest silence, citing *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). *See* Dkt. 2 at 9–10. In *Doyle*, the Supreme Court held that impeachment based on a criminal defendant's post-arrest silence after receiving *Miranda* assurances violated the defendant's due process rights. 426 U.S. at 619. Solley claims that, after he was arrested, he briefly discussed his motives for committing the robbery with Officer Ryza, but remained silent after he was read his *Miranda* rights. Dkt. 2 at 9. Thus, he claims, the prosecutor's reference to his failure to tell Officer Ryza that he was worried about the safety of other people is grounds for granting habeas relief.

The state habeas court found that the State did not improperly comment on Solley's post-arrest silence. Dkt. 2-1 at 29. There is ample support in the record for that decision. On direct examination, defense counsel Charles Banker specifically questioned Solley about his conversation with Officer Ryza, and Solley testified that he told Officer Ryza that he only helped his father rob the bank because his father had "threatened to kill people or allow the police to kill him." Dkt. 2-1 at 29; Dkt. 24-1 at 106. Solley further testified, "I also told Officer Ryza that my dad wanted to use a real gun and I didn't and that's why we used a BB gun. So no one would get hurt." Dkt. 24-1 at 107. Solley testified regarding the details of this conversation in a clear attempt to bolster the credibility of his duress defense. By doing so, he opened the door to the State's cross-examination concerning the truth of his testimony. *See U.S. v. Havens*, 446 U.S. 620, 626–27 (1980) ("It is essential . . . to the proper functioning of the adversary system that when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth.").

4

Moreover, according to the facts alleged by Solley, the conversation with Officer Ryza occurred after Solley was arrested but before *Miranda* warnings were issued.[3] *Doyle* is inapposite here because the State's questions on cross-examination were not comments about Solley's silence, but rather questions concerning the conversation that took place *before* Solley invoked his right to remain silent. At no time did the State use his post-*Miranda* silence to impeach his testimony.

Ground One should be denied.

**Ground Two: False testimony**

To obtain habeas relief on grounds of perjured testimony, the petitioner must show: (1) the testimony was actually false; (2) the State knew it was false; and (3) the testimony was material. *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).

In Ground Two, Solley alleges that the State introduced false testimony in violation of his due process rights. Dkt. 1 at 14; Dkt. 2 at 14–15. During the punishment phase of the trial, the State presented testimony from a witness, Yasin Omar, who stated that he was robbed at gunpoint by Solley while working at a Blimpie's sandwich shop in 1994. Dkt. 24-2 at 127–32. Solley claims that Omar gave false testimony concerning the facts of the 1994 robbery, and the State knew that the testimony was false. Dkt. 1 at 14; Dkt. 2 at 14.

Omar testified that he had multiple guns pointed at him by masked assailants and was struck in the head with one of the guns. Dkt. 24-2 at 129–30. It was established through earlier testimony from Officer Rieks that Omar identified Solley out of a police lineup. *Id.* at 125. Solley later took the stand and testified that he was not one of the assailants in that case, but was waiting in the getaway car. Dkt. 24-4 at 12.

---

[3] *See* Dkt. 2 at 9 ("Petitioner began to briefly discuss why he committed the bank robbery with his father, Vachel Solley. At which time, Sergeant Ryza read Petitioner his Miranda rights and asked if he'd like to make a statement. Petitioner immediately invoked his right to remain silent and ended the conversation with Ryza.").

Solley argues in the petition that the police report and Officer Rieks's testimony show that only one person robbed the sandwich shop that day, whereas Omar testified that "about four guys" robbed him. Dkt. 2 at 14–15. Solley claims that this variance on the record conclusively demonstrates that "Omar's entire trial testimony is false." *Id.* at 14. It does not. At most, this discrepancy presented a reliability issue as to Omar's recollection of a robbery that occurred many years earlier; it does not prove that Omar gave perjured testimony that the State knew to be false. As the state habeas court found, although Solley testified that he participated in the sandwich shop robbery, he never disputed the accuracy of Omar's testimony. Dkt. 2-1 at 28.

Ground Two should be denied.

**Ground Three: Improper argument and use of expert testimony**

Proper jury arguments fall within one of four categories: (1) summary of the evidence; (2) reasonable deduction from the evidence; (3) response to argument of opposing counsel; and (4) plea for law enforcement. *Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990).

In Ground Three, Solley claims that the prosecutor "improperly insinuated Petitioner was lying" and "gave her personal opinion of the Petitioner and the evidence presented at trial." Dkt. 1 at 14–15; Dkt. 2 at 21–31. Solley points to three separate statements made by the prosecutor during her closing rebuttal:

> Let's pretend like we believe the defendant. Let's pretend like we're going to take what he said as truth. . . .
>
> How -- how is this okay to say, oh, you know what? I'm going to protect those tellers because I'm going to go in and do it myself. It's absolutely absurd that they are bringing this -- these crap excuses to you. . . .
>
> He's not a regular robber. He's not. He is smart. He is manipulative, this defendant. . . .

Dkt. 24-2 at 41–43.

Importantly, Solley testified that he helped rob the bank because he believed his father would kill people or himself if Solley did not assist in the robbery. *See* Dkt. 24-1 at 76, 90. During his direct examination, Solley explained that his father intended to use a .357 Magnum pistol to rob the bank, was willing to kill people during the robbery, and there was nothing Solley could do to stop his father from robbing the bank. Dkt. 24-1 at 89–90. Solley testified that he agreed to rob the bank with a BB gun "[s]o no one would get hurt." *Id.* at 90. He also explained that he held up the bank tellers while his father stood watch at the door because he wanted to keep his father from directly endangering the tellers' lives. *Id.* at 93–96.

By arguing that he acted under the direction and manipulation of his father, Solley opened the door for the State's attack on the credibility of his testimony and defense. The argument Solley complains about was simply a response to defense counsel's arguments and a discussion of the evidence presented. During cross-examination, the State countered Solley's testimony that his father planned the robbery and forced his assistance with evidence that Solley was an experienced robber and planned the robbery himself. *See* Dkt. 24-1 at 126–31. The State's characterizations of Solley as "smart," "manipulative," and "not a regular robber" were reasonable deductions from the evidence presented by the State, not an impermissible injection of the prosecutor's personal opinion of Solley. The above-quoted statements were proper jury arguments.

Next, Solley complains of the prosecutor's examples of "duress" during closing arguments (Dkt. 24-2 at 40–42), which Solley characterizes as the improper giving of "unsworn, expert testimony" concerning those legal terms. Dkt. 1 at 15; Dkt. 2 at 23.

Solley fails to demonstrate that these comments deprived him of a fair trial. The jury charge included a clear, written definition of the affirmative defense of duress (Dkt. 21-8 at 43)

and was available to the jurors while they deliberated. *See* Dkt. 24-2 at 18. There is an "almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). Solley fails to demonstrate that the prosecutor's examples caused the jurors to deviate from the judge's instructions in any way, and these remarks do not render the verdict suspect.

Solley also asserts that the State, during the punishment phase of trial, wrongfully introduced matters outside the record when the prosecutor mused as to the reason Solley used a BB gun instead of a pistol:

> And this Defendant, his father -- his father is not one bit as smart as this guy. He is smart. You want to know a secret? The BB gun. You want to know why it's a BB gun? There are two reasons. One, you either can't get your hands on one, a real gun to use, or, two, you want to convince a jury or a prosecutor that it's not a real gun for parole purposes.

Dkt. 24-4 at 46; Dkt. 1 at 15; Dkt. 2 at 23–24. This argument was made, however, in response to defense counsel's closing arguments:

> How many professional robbers who are teaming up to do a robbery use a BB gun? That doesn't make any sense. There's no professional robbery here. No professional would use a BB gun. "We don't have a gun, dad. Well, I'll tell you what. Let's go get a BB gun." Does that sound professional to you? It doesn't sound to me.

Dkt. 24-2 at 34. The State, therefore, could properly respond with comments about Solley's robbery experience and his motive for using a BB gun during the robbery.

Finally, Solley claims that the State misstated the function of the jury in the following argument:

> You have to make the cost of this type of robbery, this type of level of robbery fit. You have to make the robbers -- and when I say deterrence, I mean not just the Defendant. I mean robbers of this kind. Let them know "Hey, if you do this crime, you're going to get a lot of time if you're caught." . . .

8

> This level of robbery, when you go into a bank and do a complete takeover, you have just raised the stage and the idea that someone is actually going to be killed by, like, 100. The fact that other robbers could look to this . . . your verdict lets them know what we think about this crime.

Dkt. 24-4 at 42–43; Dkt. 1 at 15; Dkt. 2 at 23, 25–26.

"A proper plea for law enforcement may take many forms, one of which is to argue the relationship between the jury's verdict and the deterrence of crime in general." *Borjan*, 787 S.W.2d at 55. The State is permitted to argue for deterrence of specific crimes as well as discuss the impact of the verdict on the community. *Id.* at 55–56. It properly did so here.

Ground Three should be denied.

**Ground Four: Ineffective assistance of counsel**

To prevail on an ineffective assistance of counsel claim, the petitioner must prove: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential," and the petitioner must overcome a strong presumption that counsel rendered effective assistance. *Id.* at 689–90.

If the barriers to relief presented by § 2254(d) and *Strickland* seem nearly insurmountable to a habeas petitioner, that is because they are. Section 2254(d) imposes an almost complete bar to federal re-litigation of claims already rejected in state proceedings. *See Harrington v. Richter*, 562 U.S. 86, 102 (2011). A federal court reviewing a state habeas court's *Strickland* determination must be "doubly" deferential, asking not whether counsel's performance was satisfactory, but rather "whether there is any *reasonable argument* that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105 (emphasis added). "The *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* If the petitioner makes an

insufficient showing as to one prong of the *Strickland* test, the court's analysis should stop there. *See Strickland*, 466 U.S. at 697.

In Ground Four, Solley claims that he was denied effective assistance of counsel based on alleged failures by counsel to: (a) relay a 20-year plea offer; (b) review the indictment, object to lack of service, and file a motion for continuance; (c) ensure that the verdict was unanimous; (d) object to comment on Solley's post-arrest silence; (e) investigate Solley's prior convictions; (f) impeach Omar with a prior inconsistent statement; (g) object to the State's use of inadmissible evidence and false testimony; (h) object to the State's improper arguments; and (i) object to sentencing Solley as a repeat offender. Dkt. 1 at 16–19.

### a. Failure to relay the State's plea offer

Solley claims that counsel failed to relay the State's plea offer. Dkt. 1 at 16. Solley alleges that during the punishment phase of his trial, while the jury was deliberating, the prosecutor told the trial judge that Solley had earlier rejected a plea offer of 20 years. Dkt. 2 at 32. According to Solley, this was the first time he heard of the offer. *Id.* In support of his claim, Solley presents four affidavits signed by himself, his wife, his sister, and his mother, each repeating that the prosecutor represented to the judge that a 20-year offer had been made and rejected. Dkt. 2-2 at 7–17.

These affidavits alone are not sufficient to rebut the presumption of correctness afforded the factual findings adopted by the CCA. The state habeas court found, based on affidavits submitted by the prosecutor and defense counsel, that the State did not make a 20-year plea offer. Dkt. 23-15 at 31. Although the prosecutor could not remember with certainty whether a plea offer was made, the State's files contained no written notation that an offer was ever made. *Id.* at 7. Solley points to no evidence in the trial record to the contrary. The affidavits of

interested family members, without more, are not sufficient evidence to support a finding that a 20-year plea offer was made to Solley.

> *b. Failure to review the indictment, object to lack of service, and move for a continuance*

The indictment ultimately presented to the jury alleged the use of two different deadly weapons in the course of committing the robbery: a knife and a BB gun. Dkt. 23-18 at 56–57; Dkt. 21-7 at 7.[4] Three earlier indictments not presented at trial alleged the use of a knife (Dkt. 21-7 at 8),[5] a BB gun (Dkt. 21-7 at 13),[6] and a combination of a knife, firearm, and pellet gun (Dkt. 21-7 at 34).[7]

Solley alleges that, due to lack of service of the new indictment (Cause No. 112854), counsel did not adequately prepare for trial, failed to object to lack of notice, and failed to request a continuance. Dkt. 1 at 16; Dkt. 2 at 37. Solley complains that counsel prepared for trial based on the allegations contained in the old indictment (Cause No. 1062906), "was not paying attention when the [new] indictment was read in court and failed to realize that the indictment the Petitioner was on trial for . . . alleged a different manner and means of committing the offense." Dkt. 2 at 38. In other words, Solley argues that counsel was ineffective because he was ill-prepared for the State's argument that a BB gun, rather than a pellet gun, was used to rob the bank.

The state habeas court found, based on the affidavit of defense counsel, that counsel "discussed the indictment and allegations therein with the applicant on several occasions" and "investigated and prepared for a trial based upon the applicant's desire for a trial." Dkt. 2-1 at

---

[4] Cause No. 1125854, prepared July 18, 2007
[5] Cause No. 1062906, prepared March 26, 2006
[6] Cause No. 1062906, prepared May 9, 2006
[7] Cause No. 1124960, prepared July 12, 2007

29. In the affidavit, defense counsel represented that he discussed the indictment and the allegations with Solley on multiple occasions, prepared for trial by reviewing the State's files and researching the relevant legal issues, and discussed with Solley the details of his duress defense. Dkt. 2-3 at 2–3. Counsel did not expressly confirm or deny in his affidavit that he was given notice of the new indictment. *See id.* at 2 (noting that he needed to review the record to confirm whether the State gave him notice of the new indictment).

The trial record quoted by Solley does not sufficiently demonstrate a lack of service or that Solley was not informed of the nature of the allegations against him such that the state court's denial of this claim was unreasonable. Moreover, Solley fails to show prejudice from any failure by counsel to distinguish between a pellet gun and BB gun because there was ample evidence presented at trial that the BB gun, in the manner used by Solley, could have caused serious bodily injury. Multiple witnesses testified that Solley aimed the BB gun at the neck and head of one of the bank tellers,[8] multiple police officers testified that the BB gun could cause serious injury either by shooting someone or being used as a blunt instrument,[9] and another witness testified that Solley hit him with the gun.[10] Additionally, it was uncontested that Solley's father displayed a knife during the robbery. *See* Dkt. 24-1 at 112.

### c. Failure to ensure unanimous verdict

The trial record reflects that the jury was polled after returning a guilty verdict, and Juror No. 19 was mistakenly polled twice while Juror No. 23 was not polled at all. *See* Dkt. 24-2 at 45–47; Dkt. 2-1 at 28. Neither the State nor defense counsel objected to this error.

Solley argues that this polling mistake conclusively proves the verdict was not unanimous and counsel was ineffective in failing to object to a non-unanimous verdict. Dkt. 1 at

---

[8] *See* Dkt. 23-18 at 84–86; Dkt. 23-19 at 20; Dkt. 23-20 at 40–41.
[9] Dkt. 23-20 at 11, 30–31.
[10] Dkt. 24-1 at 17.

17; Dkt. 2-1 at 4. It does not. Solley presents no evidence to support his conclusion that the non-polled juror's verdict differed from that of the polled jurors. Thus, Solley fails to demonstrate prejudice due to counsel's failure to object to the polling mistake.

> *d.–h. Failure to object to the improper conduct and errors alleged in Grounds One through Three*

Solley argues that counsel was ineffective for failing to object to the various alleged errors and improper conduct forming the basis of Solley's earlier claims in Grounds One, Two, and Three.

As previously discussed, Solley's claims of State error and improper conduct in Grounds One, Two, and Three are meritless. Because those claims are unsupported and meritless, it would have been futile for counsel to make the objections advocated by Solley. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("Counsel is not required to make futile motions or objections."); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

> *i. Failure to object to sentencing as a repeat offender*

Lastly, Solley claims ineffective assistance on grounds that counsel failed to object to the State entering a plea of true on his behalf as to the enhancement paragraph. Dkt. 1 at 19; Dkt. 2-1 at 19. At the beginning of the punishment phase of trial, the State presented the enhancement paragraph:

> Ms. Weltin:   Before the commission of the offense alleged above, hereafter styled the primary offense, on November 22nd of 1994 in Cause No. 9411764, in the 179th District Court of Harris County, Texas, the defendant was convicted of the felony offense of aggravated robbery. Signed, foreman of the grand jury.
>
> The Court:   Did you read the cause number?

| | |
|---|---|
| Ms. Weltin: | In Cause No. 9411764. |
| The Court: | Which you enter your plea of true or not true? |
| Ms. Weltin: | He's pleading true and we're bringing a deputy in. |
| Mr. Banker: | Your Honor, he -- |
| The Court: | All right. Call your next witness. |

Dkt. 24-2 at 48. Solley argues that defense counsel failed to object to the court's acceptance of a plea of true when, in fact, he wished to plead not true. Dkt. 1 at 19.

In making his argument, Solley seizes upon the fact that defense counsel did not explicitly say "true" or "not true" in response to the court's question. Although the presentation of the plea is somewhat peculiar, Solley's claim that he wished to plead not true to the enhancement paragraph is entirely contradicted by the record. In earlier testimony during the guilt stage, Solley admitted that he had been convicted of three separate aggravated robberies. Dkt. 24-1 at 133. He also admitted during the punishment stage that he participated in the 1994 robbery of Gerland's Grocery—the crime alleged by the enhancement paragraph. Dkt. 24-4 at 9–11. The State introduced into evidence the judgment convicting Solley of that 1994 aggravated robbery. Dkt. 24-2 at 53–54; Dkt. 24-6 at 6. Therefore, it was not improper to plead true to the enhancement paragraph.

The Ground Four ineffective assistance claims should be denied in their entirety.

## CONCLUSION

For these reasons, the Court recommends that Solley's petition be denied with prejudice. All remaining motions should be terminated as moot. Solley has not demonstrated that reasonable jurists would find the validity of his claims debatable. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, the Court recommends that a certificate of appealability not issue.

The parties have 14 days from service of this memorandum and recommendation to file written objections. Failure to timely object will preclude appellate review of factual findings or legal conclusions, except for plain error. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72.

Signed at Houston, Texas, on August 11, 2016.

Stephen Wm Smith

United States Magistrate Judge